# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM HINESLEY, III, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> WENDY KNIGHT, Superintendent, ) <br> ) <br> Respondent. ) | No. 1:14-cv-1097-JMS-TAB |

**Entry Discussing Petition for Writ of Habeas
Corpus and Denying Certificate of Appealability**

William Hinesley, III seeks habeas corpus relief. Having considered Hinesley's petition, the respondent=s return to order to show cause, Hinesley's reply, and the expanded record, the court finds that Hinesley's petition for writ of habeas corpus must be **denied** and this action **dismissed with prejudice.** In addition, the court finds that a certificate of appealability should not issue.

## I. Background

Hinesley is serving a sentence imposed in 2010 by an Indiana state court following his conviction for child molestation. His conviction was affirmed on direct appeal in *Hinesley v. State,* 2011 WL 5117056 (Ind.Ct.App. Oct. 27, 2011)(*Hinesley I*). The denial of his petition for post-conviction relief was affirmed on appeal in *Hinesley v. State,* 999 N.E.2d 975 (Ind.Ct.App. 2013) (*Hinesley II*).

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1); *Daniels v. Knight,* 476 F.3d 426, 434 (7th Cir. 2007). No showing of such a nature has been made here. The pertinent facts were summarized as follows:

> On the night of January 16, 2009, the Hinesley family was at home in Paragon, Indiana. Hinesley, his son William J. Hinesley, IV ("Billy"), who was twenty years old at the time, a foster daughter, V.V., who was thirteen years old at the time, and others were present. Eventually, Hinesley and V.V. were the only ones awake. They sat on a couch in the living room and talked as they watched a movie. Next, Hinesley got up and went into the kitchen. When he returned, he approached V.V. and pulled down her pants and underwear. Hinesley got on top of V.V. and put his penis in her vagina. After a short period of time, V.V. tried to push Hinesley away, and he got up and left the room. V.V. got up and pulled up her pants.
>
> Meanwhile, Billy was going to the kitchen to get a glass of water. He encountered V.V., who told him that she had just had sex with Hinesley. Billy sent V.V. to the master bedroom while he woke his sister, S.H., and had her go into the master bedroom with him and V.V. In the morning, Billy contacted his uncle, who was a police officer in Mooresville, Indiana, and the local police were contacted.

*Hinesley I,* 2011 WL 5117056.

On direct appeal, the Indiana Court of Appeals found that sufficient evidence supported Hinesley's conviction and that the trial court was not required to make a specific finding to explain why it did not find Hinesley's contrary testimony credible. In the post-conviction relief action, Hinesley presented claims of ineffective assistance of counsel based on failing to object to hearsay evidence, failing to object to the prosecutor's vouching and use of the hearsay evidence, failing to present exculpatory evidence and evidence challenging the victim's credibility, failing to present a recording of V.V.'s initial statement and failing to present the record of V.V.'s medical examination. Hinesley also raised a freestanding claim that he was denied due process based on the prosecutor's use of hearsay evidence.

In the habeas petition, Hinesley raises the single claim of ineffective assistance of trial counsel. The specifications supporting this claim are that his trial counsel was ineffective based on: (1) not objecting to hearsay evidence; (2) not objecting that presentation of Billy as a witness amounted to prosecutorial misconduct; (3) not objecting to vouching testimony; and (4) failing to present evidence that supported his credibility and "demonstrated the alleged victim's lack of

credibility." Hinesley also argues that the Court of Appeals' application of the judicial temperance doctrine and heightened deference to a judge who oversees both a trial and postconviction proceeding violated federal case law and caused his claim of cumulative prejudice to be overlooked.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). Hinesley filed his 28 U.S.C. § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). His petition, therefore, is subject to the AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

"Under the current regime governing federal habeas corpus for state prison inmates, the inmate must show, so far as bears on this case, that the state court which convicted him unreasonably applied a federal doctrine declared by the United States Supreme Court." *Redmond v. Kingston,* 240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted).

## III. Discussion

*Strickland v. Washington,* 466 U.S. 668 (1984), provides the clearly established Federal law, as determined by the Supreme Court of the United States that governs Hinesley's claim of ineffective assistance of counsel.

> *Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence" entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence. *Id.,* at 685–687. "Under

> *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694).

*Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014)(parallel citations omitted).

The foregoing outlines the straightforward features of *Strickland's* two-prong test. In the context of the claims that Hinesley presents, however, AEDPA raises the bar. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal and end citations omitted). When the AEDPA standard is applied to a *Strickland* claim, the following calculus emerges:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable--a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance,* 129 S. Ct. 1411, 1420 (2009)(internal citations and quotations omitted).

The Indiana Court of Appeals properly recognized the two-prong *Strickland* test. *Hinesley II,* 999 N.E.2d at 981. The Indiana Court of Appeals examined each specification of Hinesley's claim of ineffective assistance of counsel at trial. In doing so, that Court did not transgress the very deferential AEDPA standard which has already been noted. *Atkins v. Zenk*, 2012 667 F.3d 939, 943-44 (7th Cir. 2012) ("Plainly stated, these are demanding standards. This Court has recognized that federal courts should deny a habeas corpus petition so long as the state court took the constitutional standard 'seriously and produce[d] an answer within the range of defensible positions.'")(quoting *Mendiola v. Schomig,* 224 F.3d 589, 591–92 (7th Cir. 2000)).

The Indiana Court of Appeals explained that it was counsel's strategy for the conflicting statements Billy and V.V. to be admitted, even if hearsay, to show that the very inconsistency of those statements and thereby establish that the State's version of their statements was not credible. *Hinesley II*, 999 N.E.2d at 983-84. Furthermore, "Hinesley concedes that the hearsay evidence was admissible for impeachment purposes, and therefore the evidence was going to be admitted in one form or another. As defense counsel explained during the postconviction hearing, he hoped that allowing all of the statements into evidence and demonstrating the inconsistencies among the multiple statements would work to Hinesley's advantage to show V.V.'s and Billy's motive to fabricate and to create reasonable doubt." *Id.* at 984. The Indiana Court of Appeals next found that failing to object to the vouching testimony contained in the testimony of Detective Downing was part of counsel's trial strategy and that, in any event, "the record reveals that the two statements were isolated and not pervasive and did not affect the outcome of the trial. We are unpersuaded that but for counsel's failure to object to the alleged improper vouching statements, there is a reasonable probability that the verdict would have been different." *Id.* at 985-86. Hinesley's claim that his attorney was ineffective by failing to object to the presentation of Billy as a witness as prosecutorial misconduct was not presented in *Hinesley II* and at this point is procedurally defaulted. The same is true as to Hinesley's *Strickland* claim of cumulative error.

Hinesley contends that his attorney committed error by not introducing a medical report. The medical report neither supported nor negated V.V.'s sexual contact with Hinesley. *Id.* at 986. The medical report did not indicate that physical trauma had been inflicted on V.V.'s vagina. *Id.* The medical report thus did not corroborate or negate Hinesley's testimony as to any disputed point and did not, contrary to his assertion, support his credibility and demonstrate V.V.'s lack of credibility. Neither the State's theory of the crime nor V.V.'s testimony—or any prior statement

attributed to V.V.—suggested, depicted or depended on any physical trauma to V.V.'s vagina. Apart from this, the parties had already stipulated that DNA tests conducted at the same time as the physical examination showed no evidence of sexual contact between Hinesley and V.V. *Id.* This was both pertinent and exculpatory evidence, and decisions pertaining to "trial strategy and tactics such as what evidence should be introduced, what stipulation should be made, what objection should be raised," reside with trial counsel. *Sexton v. French,* 163 F .3d 874, 885 (4th Cir. 1998) (internal quotation marks and citation omitted). In this case, the value of forensic evidence offered through stipulation quite understandably trumped that of the equivocal medical report. Counsel was not ineffective in having made that decision in this case, where even when gifted with hindsight no just criticism can be made of the decision. *U.S. v. Hirschberg*, 988 F.2d 1509, 1513 (7th Cir. 1993)("In instances when defendants attack trial counsel's strategy choices, we offer enormous deference to those choices, and we do not rely on the 'perfect vision of hindsight'"). To the extent relevant, the medical report would have been cumulative, and even when the decision to not proffer cumulative evidence is intentional and then criticized as *Strickland* error, "such arguments come down to a matter of degrees, which are ill-suited to judicial second-guessing." *Woods v. McBride*, 430 F.3d 813, 826 (7th Cir. 2005) (citing *Conner v. McBride*, 375 F.3d 643, 666 (7th Cir. 2004)); *see also Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012) ("Evidence is cumulative when it goes to prove what has already been established by other evidence.")(internal quotation omitted)(citing cases).

As the foregoing shows, the Indiana Court of Appeals "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000). Because this court cannot find that the Indiana Court of Appeals "unreasonably applie[d] [the *Strickland* standard] to the facts of the case," Hinesley's claim of

ineffective assistance of counsel at trial does not support the award of habeas corpus relief. *Murrell v. Frank,* 332 F.3d 1102, 1111-12 (7th Cir. 2003)(citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

As to the claims which were properly presented to it and which are renewed here, the Indiana Court of Appeals took the constitutional standard seriously and produced an answer within the range of defensible positions. This rests on the analyses already noted and on the trial court's explicit finding, also noted by the Indiana Court of Appeals, that she found V.V.'s testimony to be credible. The Indiana Court of Appeals= *Strickland* decision in *Hinesley II* was not "an unreasonable application of clearly established Federal law." *Mitchell v. Esparza,* 540 U.S. 12, 17 (2003) (per curiam). Accordingly, this decision is entitled to AEDPA deference under ' 2254(d)(1), *id.,* and Hinesley is therefore not entitled to habeas corpus relief based on his claims that he was denied the effective assistance of counsel at trial.

Hinesley also argues that the Court of Appeals' application of the judicial temperance doctrine and heightened deference to a judge who oversees both a trial and postconviction proceeding violated federal case law and caused his claim of cumulative prejudice to be overlooked. This is an attack on the decision in *Hinesley II*, but errors at post-conviction do not present a cognizable basis for relief under § 2254(a). *Montgomery v. Meloy,* 90 F.3d 1200, 1206 (7th Cir.) ("[u]nless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, . . . errors in state collateral review cannot form the basis for federal habeas corpus relief"), *cert. denied,* 519 U.S. 907 (1996); *Williams v. State,* 640 F.2d 140, 143-44 (8th Cir.) ("Infirmities in the state's post-conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction. . . . Errors or defects in the state post-conviction proceeding do not, *ipso facto,* render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings."), *cert. denied,* 451 U.S. 990 (1981). Even if

properly preserved, therefore, the foregoing claims of error in the post-conviction appeal do not warrant the habeas relief Hinesley seeks.

Even if a cognizable claim could be found in the manner in which the post-conviction relief action was adjudicated in the state courts, moreover, there is no merit to it. In the analogous federal collateral challenge under 28 U.S.C. § 2255, it is generally accepted that Congress intended district judges to review proceedings over which they presided. *See Eaton v. United States*, 458 F.2d 704, 708 (7th Cir. 1972). Personal knowledge of the prior proceedings is deemed to be an advantage rather than a mark of inherent prejudice." *Id.*; *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977)("In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion"). So the rule acknowledged in *Hinesley II* to which Hinesley objects is in fact constitutionally unobjectionable.

## IV. Conclusion

The standard of § 2254(d) is "difficult to meet . . . because it was meant to be." *Burt v. Titlow,* 134 S. Ct. 10, 16 (2013) (internal quotation marks omitted); *see also Cavazos v. Smith,* 132 S. Ct. 2, 7–8 (2011) (per curiam) (citing Supreme Court jurisprudence "highlighting the necessity of deference to state courts in § 2254(d) habeas cases"). Hinesley's habeas petition fails to satisfy this difficult standard and that petition is therefore **denied.**

Judgment consistent with this Entry shall now issue.

## V. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254 Proceedings*, and 28 U.S.C. § 2253(c), the court finds that Hinesley has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The court therefore denies a certificate of appeal.

IT IS SO ORDERED.

Date: __April 29, 2015__

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Electronically Registered Counsel